UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

A<small>VERN</small> L<small>EE</small> B<small>URNSIDE</small>,

        Plaintiff,                    Case No. 1:21-cv-97

v.                                        Hon. Hala Y. Jarbou

R<small>ANDEE</small> R<small>EWERTS</small>, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint as frivolous and for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. In his initial complaint,

Plaintiff sued MDOC Director Heidi Washington, DRF Warden Randee Rewerts, and DRF Correctional Officers Unknown Shot, Unknown Shutt, Unknown Thomsen, Unknown Lott, Unknown Burns, Unknown Williams, Unknown Mireless, and Unknown Neve.

Plaintiff alleges that he was placed in segregation during October 24, 2020, for fighting, disobeying a direct order, and possession of a weapon. He claims, on information and belief, that Officers Shot, Shutt, Thomsen, Lott, and Copeland (not named as a defendant) provided other inmates in segregation with "informant paperwork" to label Plaintiff as a rat and motivate the inmates to kill Plaintiff. Plaintiff claims that Defendant Shutt told inmates in segregation that Plaintiff was "worth $800,000 divorced." (Compl., ECF No. 1, PageID.3.) Plaintiff heard Shutt tell the inmates that Plaintiff's wife and her boyfriend were willing to pay to have Plaintiff killed.

Plaintiff asked to be placed in protective custody. Prisoner Counselor Beecher (not a defendant) put Plaintiff on a protective custody wing. While Plaintiff was there, he heard Defendants Burns, Williams, and Mireless tell inmates the officer were going to open Plaintiff's cell door so the inmates could stab and kill Plaintiff. The officers told the prisoners that once the inmates stabbed Plaintiff, the nurse would make sure Plaintiff was dead.

Defendant Williams packed up Plaintiff's belonging on November 29, 2020, when Plaintiff returned to segregation from protective custody. Plaintiff discovered his legal materials were missing—specifically Plaintiff's marriage certificate, his wife's complaint for divorce, Plaintiff's correspondence with his divorce lawyer, and grievances. Plaintiff notes that his wife did not go through with the divorce.

On December 6 and 10, 2020, Plaingiff sent law library requests to Librarian Loomis (not named as a defendant). Loomis failed to provide the requested materials. Plaintiff claims Loomis denied Plaintiff access to the courts.

Plaintiff asked to be transferred to another facility because he feared for his life. Another inmate told Plaintiff that Defendant Rewerts said that once Plaintiff was transferred Rewerts would have the transporting officers kill Plaintiff and write it up as an assault on staff.

Plaintiff supports his complaint with an affidavit from his cellmate John Michael Sobleskey. (ECF No. 5.) Sobleskey makes parallel allegations in *Sobleskey v. Rewerts*, No. 1:20-cv-1244 (W.D. Mich.). Sobleskey's case was dismissed on initial review on February 10, 2021.

Plaintiff seeks a declaration that Defendants violated his due process rights, his rights to access the courts, and his Eighth Amendment right to be free of cruel and unusual punishment, an injunction compelling Defendants Rewerts and Washington to transfer Plaintiff to a different protective custody facility, and money damages in an unspecified amount.

Plaintiff initially filed his complaint in the United States District Court for the Eastern District of Michigan. That court transferred the matter here by order entered January 28, 2021. (ECF No. 7.) Shortly after the transfer, Plaintiff filed a supplement to his complaint. (ECF No. 10.)

Plaintiff's first supplement alleges that on January 7, 2021, he filed a grievance that alleged that his wife and her boyfriend had offered to pay $300,000 to have Plaintiff killed. Plaintiff heard Officers, Lott, Shutt, Stevenson, Thomsen, Copeland, and Gaiter and Nurses Gorn and Rumsbee, and Prisoners McDonale, McKella, Vincent, Lawson, and Lumber all plotting to kill Plaintiff. The prisoners, Plaintiff alleges, had been watching him on a hidden camera in their cells which the officers provided. Plaintiff saw and heard the officers and nurses give the prisoners weapons to kill Plaintiff. Plaintiff heard the officers tell the prisoners the officers would open Plaintiff's cell door to facilite the murder. Plaintiff claims further that, on January 13, 2021, his

3

wife came to the prison to watch Plaintiff get killed on the hidden camera. For some reason, they called the hit off.

Plaintiff says on January 12, 2021, he was called out of his cell to see the mental health doctor. Someone reported that Plaintiff was "hearing things." (Compl., ECF No. 10, PageID.9.) Plaintiff refused the medication that was prescribed. He believes "they" want him to take it so that he will sleep. Once he is asleep, they will kill him. "So every night [Plaintiff has] to stay awake." (*Id.*)

A few days after Plaintiff filed his first supplement, he moved for leave to file additional supplemental facts. (ECF No. 11.) Plaintiff reports that the mental health doctors have diagnosed Plaintiff as bipolar and schizophrenic. He claims that they want to compel Plaintiff to take injected medication to get him to sleep so that they can kill him. Plaintiff reports that since the last supplement, his wife had died leaving Plaintiff with millions of dollars in life insurance benefits. Plaintiff contends that the mental healthcare providers are forcing him to take medications so that they can take Plaintiff's money. Plaintiff claims that on January 26, 2021, he was drugged, raped twice, stabbed, and poisoned. Officers Shutt and Olmstead failed to protect Plaintiff. Nurses Silvernail and Carla were deliberately indifferent to Plaintiff's consequent serious medical needs. "They" continue to put poison in Plaintiff's food, milk, and juice. Plaintiff also claims that Sergeant Hammer has restricted Plaintiff's mail. Plaintiff cannot get legal mail, cannot file grievances, and cannot send kites seeking health care.

Just days after Plaintiff filed his first motion to supplement, he filed a second motion to supplement. (ECF No. 15.) Plaintiff claims that Officer Schutt is still trying to get Plaintiff killed. Plaintiff reports:

> Officer Schutt and other staff have a device in my cell so they can monitor my thoughts, dreams, and conversations. However, I never consented to the device nor

> did they notify me of the device. The inmates can also monitor my thoughts, dreams, and conversations with their device. The reason why I know this is because I heard the inmates talking about my thoughts, and dreams. They also know what I read and write from this device. And they know when I'm sleeping or not from this device. . . . The inmates are also watching me on camera.

(Second Mot. for Suppl. Facts, ECF No. 15, PageID.35.) Plaintiff claims that nurses are forcing Plaintiff to take antipsychotic medications by injection.

## II.     Cause for failure to pay the initial partial filing fee

By order entered January 29, 2021, the Court granted Plaintiff leave to proceed *in forma pauperis* (ECF No. 9). The Court informed Plaintiff he must pay an initial partial filing fee of $54.47. (*Id.*) ("Plaintiff must pay an initial partial filing fee of $54.47.") The Court directed the Michigan Department of Corrections to collect the funds from Plaintiff's trust account and remit them within 28 days. By the end of April, Plaintiff had not paid the initial partial filing fee. The Court entered an order to show cause for Plaintiff's failure to timely pay the initial partial filing fee. (ECF No. 18.) Plaintiff has responded. (ECF No. 19.) Plaintiff reports that the MDOC withheld the initial partial filing fee from his account and that if the fee were not paid, it was not his fault but the MDOC's. The MDOC has since paid the initial partial filing fee.

The Court concludes that Plaintiff has show cause for the failure to promptly pay the initial partial filing fee.

## III.    Motion to appoint counsel (ECF No. 3)

Plaintiff claims that he cannot afford counsel and that he is limited in his ability to access the law library; therefore, he asks the Court to appoint counsel for him. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's

discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will, therefore, be denied.

## IV.    Supplements

Under Federal Rule of Civil Procedure 15(a), a party may amend (or supplement) the party's pleading once as a matter of course at any time before a responsive pleading is served. Plaintiff's initial supplement (ECF No. 10) is his one "matter of course" amendment.

After filing his initial supplement Plaintiff has twice filed motions to add supplemental facts (ECF Nos. 11, 15). Plaintiff's motion is governed by Rule 15 which provides that, after the first amendment or supplement, a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* at 182.

Plaintiff's motions to supplement (ECF Nos. 11, 15) will be granted.

## V. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## VI. Plaintiff's allegations are implausible and factually frivolous

When reviewing a complaint for failure to state a claim, the Court is called upon to accept the allegations as true. *Iqbal*, 556 U.S. at 678. But that rule is not absolute; there are exceptions. For example, the Court need not accept legal conclusions as true. *Id*. The Court also

may disregard factual allegations if they "rise to the level of the irrational or the wholly incredible." *Patterson v. Godward*, 370 F.App'x 608, 609 (6th Cir. 2010) (citation and internal quotes omitted).

Plaintiff's allegations start out with an oft-alleged theory of liability: a correctional officer labeled a prisoner a "rat" to jeopardize the prisoner's safety among his fellow prisoners. That allegation in Plaintiff's case, however, is "upon information and belief." (Compl., ECF No. 1, PageID.3.) Plaintiff claims direct knowledge of the reason the Defendants have put Plaintiff's life in jeopardy, because Plaintiff is "worth $800,000 divorced." (*Id.*) Similarly, Plaintiff complains that the law library has interfered with his access to the courts to litigate his divorce. The docket of the Genessee County Circuit Court shows, however, that Plaintiff has been divorced from his wife for many years. *See* http://www.co.genesee.mi.us/roaccsinq/ROACase.aspx?CASE=15314177&CASETYP=DO&FILENAME=C051765835 (visited May 17, 2021). Perhaps that is why Plaintiff's story morphs, mid-stream, from one about the assets of a dissolving marriage to one about life insurance proceeds.

As Plaintiff's story progresses, it descends further and further into fantasy. Plaintiff's claim about the warden's plot to kill him under guise of a transport to another facility is implausible. (Compl., ECF No. 1, PageID.4.) Plaintiff's claim that he overheard six correctional officer, two nurses, and five prisoners hatching a plot to kill him is implausible. (Suppl., ECF No. 10, PageID.8.) Plaintiff's claim that other prisoners are watching Plaintiff in his cell using a device provided by correctional officers is implausible. (*Id.*) Plaintiff's claim that his wife (or ex-wife) visited the prison in mid-January to watch his execution on the hidden camera is implausible. (*Id.*) Plaintiff's claim that his wife (or ex-wife) died and left Plaintiff millions of dollars just days later is implausible. (First Mot. to Suppl., ECF No. 11, PageID.23–24.) Plaintiff's claim that the device

8

permits prisoners to not only watch him, but to also monitor his thoughts and dreams and anything that he reads or writes is delusional. (Second Mot. to Suppl., ECF No. 15, PageID.35.)

Plaintiff's report that he had previously stopped taking medication for depression, that he was not able to sleep and would not take medication to address his sleeplessness, and that he was diagnosed as bipolar and schizophrenic provides some explanation for the fantastic allegations. Once those allegations are stripped away, however, there is nothing left of Plaintiff's complaint. Plaintiff has failed to state a claim upon which relief can be granted.

Alternatively, the Court finds that Plaintiff's allegations are factually frivolous. As the Supreme Court stated in *Denton v. Hernandez*, 504 U.S. 25 (1992), the *in forma pauperis* statute—28 U.S.C. § 1915—authorizes a review for frivolity that "gives courts the authority to 'pierce the veil of the complaint's factual allegations' [such] that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32. Instead, "a court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." *Id*. at 32–33 (citations and internal quotes omitted). Under that standard, it is appropriate to find factual allegations frivolous when they "rise to the level of the irrational or the wholly incredible . . . ." *Id*. at 33. The Court finds that Plaintiff's claims are wholly incredible. Therefore the claims are factually frivolous and properly dismissed.

## Conclusion

The Court will grant Plaintiff's motions to supplement his complaint. The Court will deny Plaintiff's motion to appoint counsel.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed as frivolous and for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must

next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court certifies that an appeal would not be taken in good faith.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        An order and a judgment consistent with this opinion will be entered.


Dated:   May 17, 2021                         /s/ Hala Y. Jarbou
                                                             HALA Y. JARBOU
                                                             UNITED STATES DISTRICT JUDGE